UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| BRENDA CRUEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-216-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CITY OF SOMERSET and EDDIE | ) | **&** |
| R. GIRDLER, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The City of Somerset and its mayor, Eddie Girdler, moved to dismiss Counts IV, V, and VI of Brenda Cruey's Complaint, arguing that each count fails to state a claim upon which relief can be granted. [R. 8; R. 14]. Each of these counts are state law causes of action that enjoy jurisdiction in federal court due to the Court's supplemental jurisdiction over Count III, a § 1983 claim which the Defendants have not moved to dismiss. Because of the Court's interpretation of Kentucky law, and for the reasons stated herein, the Court will grant the Defendants' motion and dismiss each of the three relevant counts.

**I.**

Brenda Cruey was employed at the Somersplash Water Park in Somerset, Kentucky, as a supervisor of concessions when, on May 23, 2011, she was allegedly assaulted by another

employee, Rhon Blevins.[1] [R. 1 at 2-3]. According to Cruey, Blevins head-butted her "in an uncontrolled rage." [*Id.*]. A few days later, Cruey filed a criminal complaint against Blevins.

As a result of this complaint, Cruey alleges that the Defendants, the City of Somerset and Mayor Girdler, retaliated against her with respect to her job. [R. 1 at 3-4]. Specifically, Cruey alleges that "she was laid off because she filed the criminal complaint against Blevins." [R. 1 at 4]. In addition to the § 1983 action, Cruey brought Kentucky state law claims of Retaliation for Participating in the Legal Process (Count IV), Whistleblower Act violation (Count V), and common law Outrage (Count VI). [*Id*. at 5-9]. It is these three Kentucky claims which the Defendants now seek to be dismissed.

## II.

The Defendants argue, pursuant to Federal Rule of Civil Procedure 12(b)(6), that each of the theories for relief contained in the Complaint fails to state a claim upon which relief may be granted and must be dismissed. [R. 14].[2]

In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). Recently, the Supreme Court explained that in order "[t]o survive a motion to dismiss, a

---

[1] The claims against Rhon Blevins that were originally part of this action were severed and then dismissed for lack of subject matter jurisdiction. [R. 15].

[2] The Court notes that the Defendants cite the Kentucky Rules of Civil Procedure as containing the relevant standard for dismissal in their motion [R. 8-2 at 1] before identifying Federal Rule of Civil Procedure 12(b)(6) as the correct and applicable rule under which to move. [R. 14 at 1]. It is, of course, the federal standard which the Court will apply.

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Stated otherwise, it is not enough for a claim to be merely possible; it must also be "plausible." *See Courier*, 577 F.3d at 630. According to the Court, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Plausibility" then, is the benchmark the factual allegations contained in Cruey's Complaint must meet in order to defeat the Defendants' Motion to Dismiss.

### III.

#### A.

In Count IV, Cruey alleges that the Defendants "retaliated against [her] in violation of KRS 525.055, retaliating against a participant in the legal process." [R. 1 at 7]. She alleges that, as a result, "Defendants are liable for all damages caused by said violation pursuant to KRS 446.070." [*Id.*]. Cruey is essentially arguing that when she contacted the police to initiate a criminal investigation of her co-worker Blevins, that she would be protected from retaliatory punishment from her employer, the City of Somerset, for reporting the incident to police.

What is important to note, and what ultimately controls this issue, however, is that only certain deprivations are protected. The Defendants' conduct would violate the statute if they "engage[d] or threaten[ed] to engage in conduct causing or intended to cause bodily injury or damage to the tangible property of a participant in the legal process." Ky. Rev. Stat. Ann. § 524.055(1). Thus, an individual who was harmed by virtue of being physically beaten (or who

3

suffered a threat of physical violence) would be protected by the statute. The same is true of a person whose car or house was set on fire as a result of engaging in protected activity as their "tangible property" would have been destroyed. On the flip side, an individual who was shunned by his peers so that he sustained lost social status and was no longer invited to dinner parties because of engaging in protected activity would not have suffered an actionable harm. Only those plaintiffs who have experienced bodily injury (or the threat of bodily injury) or whose "tangible property" has been destroyed can maintain a cause of action. *See* Ky. Rev. Stat. Ann. § 524.055(1).

     Cruey does not argue that she was physically assaulted; instead, she argues that the harm she suffered was of the "tangible property" variety protected by the statute. [*See* R. 10 at 3-4]. Specifically, Cruey alleges that "the mayor took away money from the Plaintiff after having threatened that he would do so should she sign a criminal complaint against Rhon Blevins." [R. 10 at 4]. Cruey characterizes her harm as money being "taken" from her. [R. 1 at 7]. The Court interprets this alleged loss as future wages she did not obtain as a result of being terminated; there is nothing in the Complaint that could support the inference that the Defendants took money from Cruey that she already possessed and owned prior to termination. Further, Cruey alleges that the job itself was "tangible property" which, when "taken" from her, resulted in a violation of the statute. [R. 10 at 4]. As a result, Cruey's claim for Retaliation can only survive if the loss of her job and corresponding loss of future wages can be construed as "tangible property" under KRS § 524.055.

     This is a logical strain that Cruey's argument cannot hold; her loss simply does not fit within the category of losses protected by the statute. Neither party cites any Kentucky cases further defining "tangible property" in this context. When interpreting the statute, "the plain

meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source." *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (citation omitted). The Court must "assume that the Legislature meant exactly what it said, and said exactly what it meant." *Id*. (citation omitted).

The Defendants urge the Court to review *Black's Law Dictionary* to aid it in this task. *Black's* defines "tangible property" as "[p]roperty that has physical form and characteristics." Black's Law Dictionary (9th ed. 2009). A separate dictionary further supports this definition. *Webster's* defines "tangible property" as "property (as real estate) having physical substance apparent to the senses." Webster's Third New International Dictionary of the English Language Unabridged 2337 (3rd ed. 2002). The clear and plain meaning of "tangible property," then, is property that can be touched. It is something of substance that exists somewhere in physical form, not merely in the abstract.

This definition leads the Court to conclude that KRS §525.055 does not protect the harm allegedly imposed upon Cruey. There is nothing concrete or "tangible" about one's job or one's right to future wages. Once the wages have been earned, they take on a physical form that may be protected under the statute, but Cruey does not allege that the Defendants deprived her of earned wages, only the potential opportunity to earn such future income. This abstract opportunity is not protected by the statute. The Kentucky legislature included the word "tangible" in the statutory text, and in order to give this word meaning, the Court must conclude that Cruey's injury is not protected.

Nonetheless, Cruey argues that "tangible property" is broader than its otherwise plain meaning would suggest. In so arguing, Cruey relies on the United States Supreme Court case of

*Paul v. Davis* to argue that employment is a "tangible interest" and is therefore covered by the Kentucky statute. [R. 10 at 4]. This argument is not persuasive. It is true that the *Paul* Court states, in passing, that "employment" is a "more tangible interest" than reputation, 424 U.S. 693, 701 (1976), but it does so in the context of a Fourteenth Amendment analysis that is extremely different from the analysis required in this case. Extrapolating from this passing comment that "employment" in this state law setting is now "tangible property" is problematic for a number of reasons.

First, the Supreme Court simply said employment was "more" tangible than reputation. This is not a conclusion that employment qualifies as tangible even in the exact scenario the Supreme Court was analyzing; it is only a statement that, in the Court's mind, it is more concrete than the concept of reputation. Second, the *Paul* Court identified employment as an "interest," not "property." The Kentucky statute is concerned with "property," not "interests." *See* Ky. Rev. Stat. Ann. § 524.055(1) (remedying "damage to the tangible property"). Thus, the inference Cruey seeks the Court to draw with respect to the meaning of "tangible" would still not support her argument as there is no similar support for inferring that "interest" necessarily means "property."

Finally, even if the Court were to conclude that employment is "tangible" somehow under that statute, it could still not conclude that it is property. "Property" is defined by state law. *See Paul*, 424 U.S. at 710 (stating that property "interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law"). Kentucky law only protects employment as a property interest when the employee has a "legitimate claim of entitlement to continued employment." *Romero v. Administrative Office of Courts*, 157 S.W.3d 638, 640 (Ky. 2005). Nowhere does Cruey claim that she was working under contract or

otherwise obtained such a legitimate claim of entitlement. Instead, her hope to continued employment is the exact type of "subjective expectancy" that is not recognized as property in Kentucky. *See id*. at 640-41.

As a result, the Court must reject Cruey's argument opposing dismissal as unavailing, rely on the plain meaning of the statute, and conclude that Cruey's "Retaliation for Participating in the Legal Process" claim must be dismissed.

**B.**

Unfortunately for Cruey, the same is true of her Whistleblower claim set out in Count V of her Complaint. [R. 1 at 7-8]. Cruey argues that the allegedly retaliatory action of the Defendants in terminating her employment violates Kentucky's "Whistleblower Statute" as well. The Defendants challenge this claim by arguing that "Kentucky's Whistleblower Act is not applicable to municipalities" such as the City of Somerset or its employees. [R. 8-2 at 4]. The Court agrees.

Broadly stated, the Act prohibits "employers" from discouraging individuals from reporting actual or suspected violations of law to authorities. *See* Ky. Rev. Stat. Ann. § 61.102(1). Employer is defined as "the Commonwealth of Kentucky or any of its political subdivisions" and "any person authorized to act on behalf of the Commonwealth, or any of its political subdivisions." Ky. Rev. Stat. Ann. § 61.101(2). The scope of the Act is limited to only proscribe behavior of certain entities and individuals. On the face of the Act, those entities and individuals are limited to political subdivisions of Kentucky and agents or employees of those subdivisions.

While it was arguably an open question at the initiation of the current action, the Kentucky Supreme Court recently made it plain that municipalities such as the City of Somerset

7

are not political subdivisions under the Act. Kentucky's highest court held "that cities are not political subdivisions under Kentucky's Whistleblower Act, and city employees are therefore not protected by the Act." *Wilson v. City of Central City*, 2012 WL 1450136 *6 (Ky. 2012). As Cruey points out herself, she was "at all times relevant . . . an employee for the City of Somerset" and "Somerset is a city incorporated under the laws of Kentucky." [R. 1 at 2]. Based on the unequivocal holding in *Central City*, these facts preclude the Court from allowing the claim to survive the Defendants' motion.[3]

## C.

In Count VI of the Complaint, Cruey alleges that "[t]he conduct of the Defendants constituted outrageous conduct beyond the bounds of a decent civilized society. This intentional infliction of emotional distress has caused Plaintiff to suffer damages." [R. 1 at 8]. The Defendants have moved for dismissal, arguing that "Cruey has failed to allege any facts that would demonstrate that Mayor Girdler's or the City's conduct was outrageous." [R. 8-2 at 12]. For her part, Cruey argues that "[i]t is beyond any sense of morality that the mayor would defend a criminal and punish the hard-working city employee." [R. 10 at 7].

In Kentucky, a claim of outrage contains four elements: intentional or reckless conduct of a wrongdoer, conduct which is so outrageous and intolerable "that it offends against the generally accepted standards of decency and morality," severe emotional distress, and a causal connection between said conduct and the distress. *Morgan v. Bird*, 289 S.W.3d 222, 228 (Ky.

---

[3] The Court is aware, as are the parties [*see* R. 16; R. 17; R. 18], that the *Central City* opinion is not yet final. Nonetheless, given the state of the law, the Court finds that it is appropriate to dismiss the claim. Should the Kentucky Supreme Court reconsider its holding and overturn its decision so that municipalities such as the City of Somerset are potentially liable under the Act, such a circumstance could allow Cruey to obtain relief under Federal Rule of Civil Procedure 60(b)(6).

App. 2009) (citation omitted).  When construing the facts in the light most favorable to Cruey, there is no question that the elements intentional conduct and causation are satisfied.  What is less clear are two things:  whether that conduct meets the necessary standard for outrageousness, even when measured against the relatively low barrier one must meet in order to defeat a motion to dismiss, and whether Cruey suffered "severe emotional distress" as required to make out a *prima facie* case.

After reviewing Kentucky case law, the answer to both questions is a resounding "no."  Kentucky's Court of Appeals has found, as a matter of law, that the "act of terminating [an employee] does not rise to the level of 'extreme and outrageous' conduct that is required to sustain an [outrage] claim."  *Benningfield v. Petit Environmental, Inc.*, 183 S.W.3d 567, 572 (Ky. App. 2005).  While it is not binding in this context, the Court finds the Sixth Circuit's interpretation of Ohio's similar law persuasive:  "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more."  *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999). (interpreting Ohio law).  This case is similar in that Cruey's entire outrage claim is based on the theory that firing her was sufficiently extreme to satisfy the standard.  The case law is clear that it is not.

In addition, Cruey has not satisfactorily alleged severe emotional distress.  In her Complaint, she states that her damages include compensation for "embarrassment and humiliation."  [R. 1 at 8].  This is not adequately severe to satisfy the standard.  "[T]he injured party must suffer distress that is 'substantially more than mere sorrow.'"  *Benningfield*, 183 S.W.3d at 572 (quoting *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999)).  Kentucky law is clear that embarrassment, even embarrassment suffered as a result of losing one's job "does not

rise to the level required to meet the 'substantially more than mere sorrow' standard" required in order to have "severe emotional distress." *Benningfield*, 183 S.W.3d at 572.

As a result of the preceding analysis, Cruey's outrage claim is not plausible as it cannot meet two of the necessary four required outrage elements. Therefore, its dismissal is appropriate as well.

## IV.

For the reasons above, it is hereby **ORDERED** that the Defendants' Motion to Dismiss [R. 8] is **GRANTED**. Counts IV, V, and VI are **DISMISSED with prejudice**. In addition, the Defendants' Supplemental Motion to Dismiss [R. 16] is **DENIED as moot**.

This the 8th of August, 2012.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge